We have just one case on calendar for the afternoon, which is Garnier v. O'Connor-Ratcliff, 21-55118 and 21-55157. Each side will have 20 minutes. Thank you. May I begin? Yes, please. Thank you. May it please the Court, I too wish to express my deep concern for the community of Los Angeles and Pasadena in particular, and I'm very sorry to hear that you're experiencing what you've experienced, and it's a great tragedy. The particular matter before us this afternoon, in our brief, we indicated that there is not a great deal of factual evidence that was presented to the Court on the particular issues that were identified in Lindquist v. Streeck. And so I think it's important to note that we had indicated the Court may be inclined to remand this to the District Court to gather further information, but I'm not suggesting that simply as an observation. I think that what the Court does have from the record, it goes back to the declarations that were filed in support of the motion for summary judgment that was heard before Judge Whelan, and the particular declarations are at 4ER 736 to 737. That's the declaration of Christine Paik. Then we have the declaration of Michelle O'Connor Radcliffe 4ER 741 through 743. And then we have the declaration of T.J. Zane 4ER 738 to 739. This issue of actual authority is a significant one. So in Lindquist, the Supreme Court provided us with a two-pronged test. The first one indicating that the officer must have actual authority to speak on that particular matter. Counsel and I respectfully disagree with one another. It was Mr. Briggs' position that that had already been determined by the Court in the underlying decision. I don't believe that is actually the case. That's a question. One thing I began to wonder about when I was reading this is when it has the actual authority to speak on the state's behalf. What's the state? I mean, these people are public officials. Yes. And they, in some respects, are the state. So what does it mean that they have, I mean, do they have to have authority to speak for the Board or do they have to have authority to speak for themselves as public officials? What do they need to have? It's an excellent question. And so I think that, first of all, we have to have a Brown Act convened meeting. And that is where the Board is convened. The identified for discussion. And they only act under the Brown Act as a Board majority. And at that time, they have the opportunity to address the issues that are before them. Otherwise, they're private citizens. That's not true. They're publicly elected officials with a role. And part of their role seems to involve some communication with constituents. So why do we look at them only as votes on the Board? Well, because what the Linkey test really says is, do they have actual authority? Actual authority to do what? That's what I'm asking. Actual authority to speak on behalf of the Board. Why? Why? That's what I'm asking. Why the Board? Well, because unlike the Linkey case, where we have an executive, here we have a Board. We have a Board that has rules in place. And specifically, as it relates to social media, they had a director of communications. The superintendent and the superintendent's designee, in this case, Ms. Page, she controlled and operated all social media communications. The problem exists if you have Board members that are speaking on a variety of different issues, you have the potential of having a Brown Act violation. So that is the reason that precludes them, based on the guidance of the Brown Act, not to do that. So is there any authority in, I guess this would be under state law, that says that? That says a public official cannot announce an upcoming meeting, cannot announce events? I mean, they were making what seemed to be official announcements of school district-related events. So respectfully, I would suggest that those equally are private announcements of public offenses. It's simply reporting. And that's what they say in Linkey. And they say in Linkey and the remand as well. But sometimes they were saying things like, give us feedback on the superintendent. Yeah. But again, they have to possess actual authority for this to be actionable under 1983. And we don't have a vote. We don't have any action by the Board authorizing individual Board members to make those communications. In fact, if we take a look at Ed Code 35172, it specifically talks about the Board. And when we take a look at the Board policies under 9000, 9000A, it doesn't talk about individual members. Now, the amicus brief... Can I ask you about that? Because Ed Code 35178 says that a member of the governing Board of a school district who has tendered a resignation, with a few words in between, shall, until the effective date of the resignation, continue to have the right to exercise all powers of a member of the governing Board, which suggests to me that there are powers that members have aside from the Board itself. Or it wouldn't be worded that way, right? No, I believe what that refers to is actions that are taken at scheduled meetings, either regularly scheduled meetings, or special meetings that the Brown Act provides for. Otherwise, they're just individual citizens that are speaking or reporting on their own particular perspective. I mean, Mr. Briggs, for example, provided an example of a post by T.J. Zane of a visit to a school site. Well, the same information... I have a technical question. Zane is no longer a member of the school board, so isn't he just out of the case at this point? And the record regarding him is out of the case? I mean, the injunction can't apply to him anymore. That's true. Oh, it's smooth. And so the relevant record has to be limited to the Uncontracted record. Is that right? Yes. No, I agree with that. Is she the president of the Board? I'm not sure that that is her current... She certainly had been the president of the Board, I know, last session, but they have their organizational meeting in December. I do not know whether she took on those responsibilities again. Because the president of the Board has some additional responsibilities to speak for the Board, right? In terms of organizing the agenda for the Board, that's the role. But in terms of... It also says all public statements authorized to be made on behalf of the Board shall be made by the Board president or, if appropriate, by the superintendent. Right. So she's authorized to make announcements on behalf of the Board. Well, those are situations where, for example, there was an interview by the press. And so that person is authorized to speak on a particular issue, consistent with that particular body of law. But I think that it's very different when you're talking about social media, because that would mean, under that restrictive view, that they have no private right of speech. And this is a situation where these people... I don't really understand why that's true, actually.  I don't see, or at least I don't think it's been shown that the state action issue and the First Amendment issue are actually completely parallel. I don't know why that's necessarily the case. Okay. Well, I think we need to look at the inception. Both of these sites were created before they became Board members. So unquestionably, they were campaign pages. And they continued as campaign pages. And the state of the evidence is that that was their intent. It was always their intent to push out information. And they're constantly running for re-election. I think we rejected that part of the argument about what they purported to be doing. I think we were already rejected, didn't we? Yeah, but that's... you did. But that's not the test from Lindqy. So it's not an issue of what is purported to be the case. The issue is... Oh, that's the second issue. The second prong. Correct. Correct. The first prong is that they have actual authority. And I think that without actual authority under Lindqy, that's the end of the narrative. And for example... Can I ask you, how would... so Education Code 35172C says that the governing board of any school district may inform and make known to the citizens of the district the educational programs and activities of the schools they're in. Yes. A board is not... it has to speak through someone. So how could it do that and comply with the Education Code in any way other than at least through the president speaking? No, they assign that responsibility to the superintendent or superintendent-designee. That's why they have... Not like COVID, but they didn't. That's the sentence I arranged you. All public statements authorized to be made on behalf of the board shall be made by the board president or, if appropriate, by the superintendent. Well, I think Judge Freeland was referring to 35172. And so I'm attempting to respond to 35172. And 35172 doesn't talk about individual board members. It talks about the board. In the amicus brief, I was surprised that there was also reference to this particular body of law suggesting somehow it applied to members. It did not. The body of law refers to the board. The board can only speak with one voice as a board majority. Well, even if that's true, why would we not say that the president is the one doing that? I mean, you were starting to say it's the superintendent, but I don't know what your basis for that would be. The basis for that is based on board policy. It's the board policy that says the opposite. It says that it's the president or, if appropriate, the superintendent. Well, the spokesman for the school district is the superintendent. That's what you're saying, but it's not what the policy is. Well, I believe that the policy that is set out in the evidence is that the district hired a spokesperson as the director of communications who was responsible for planning, developing, coordinating, and implementing communications and public relation activities for the district. Then it goes on to say the director... Is this just from a declaration? This isn't written as law anywhere, is it? No. These are excerpts from the record, mostly from the motion for summary judgment. In the declaration? Yes. This is just her describing her job? Correct. And that's why I said I think this issue is very important in terms of board members all over the state because the chilling impact on all of this would effectively be no board member could run the risk of creating an issue of state action. They also have First Amendment rights as well. These were campaign pages. This wasn't the president speaking on behalf of the board. She was at least speaking... This is why I asked the question I did. We did say in our earlier opinion that it wasn't questioned by the Supreme Court. The pages... Let's just stick to a chiropractor because she's the only person left. She presents herself as the president of the board and she says her email address is her board email address. Right. She doesn't say anything about any campaign once she was elected. Why are you saying that it was originally a campaign? Quoting from Linkey, I would say that the focus on appearance skips the crucial steps of actual authority. We understand that. We understand there's another step. For that step, it's not a campaign. We already held that it wasn't just a campaign website, that it was her speaking and her appearing at least to speak in her official capacity. That piece doesn't seem to be implemented or affected by anything in the Linkey opinion, is it? I just don't believe that there is evidence of actual authority. So let's stick to that question. Let's stick to the actual authority. Yeah. I don't think that there is evidence, even what might be purported to be an exercise of an assertion of speech by these elected officials, that they had actual authority to speak on behalf of the board. Mr. Shinolf, if we were to remand to the district court, what additional evidence would you be seeking to append to the existing record in order to address the Linkey test? I would want to make sure that the court had before it the issue of actual authority. And these questions weren't addressed because Judge had made his decision on the motion for summary judgment. Judge Benitez. I think Judge Talman is asking you what evidence would you offer? Okay. The issue of actual authority, that there had been no board vote, that the responsibility rests with the superintendent or the superintendent's designee. That's the evidence that I would want. And what kind of evidence would that be? One problem we have is that I believe that these various board policies are not officially in the record. Is that right? That's the problem. And that they've changed as well. Is that right? Certainly. Board policies change. The board policy, for example, on the 9,000 board policy, for you not to have it properly in front of you, I apologize. So we can find some bylaws that seem to have been adopted in August 2018. Yes. If we were to remand, would you still have evidence of what the bylaws were in 2017? Yes. Absolutely. I know this isn't in the record, but can you tell us how different they were? They weren't different. They were not different. What about since then? Have they changed since then? No, they have not. So is there any reason to remand then? I mean, can we just look at the bylaws from August 2018 and think about whether they're enough? I understand you think they are not enough for authority. But if we think they are, I'm not sure how a remand would change that. Well, I think that you could look at that. But I also think you have to take a look at the various Ed Code provisions in terms of how the board is to conduct business under the Ed Code. And then I think you also have to underscore the complications of the Brown Act. I don't really understand the relevance of the Brown Act. Is there anything on CounterActive's website that implicates the Brown Act, in fact? Yes. I mean, the board policies that I am referring to, for example, specifically reference the Brown Act. I'd like to make sure I understand your answer to my question. Are you saying that the evidence may be in the record, but that at the time of the summary motion before Judge, I guess it was the trial in front of Judge Benitez, the parties weren't focused on authority because of Judge Whalen's prior partial summary judgment in the case? Correct. And Judge Benitez at the very beginning of the case indicated, I know that there's an interest on the part of the district to reopen this issue of actual authority, but we're not going there because he believed that that had already been decided by Judge Whalen. So if we remanded, what you would actually be doing would be to essentially move for a new trial before Judge Benitez, which might look very different from the case that he actually tried when actual authority was not an issue. Is that a fair statement? I think it's a fair statement, but I think that it's actually, in Linsky v. Fried, for example, the Sixth Circuit just sent back that case on remand to the trial court to get some additional information as well. But can I ask you, when you were a moment ago listing the things you thought would be presented to the district court, they all were laws. It sounds like everything you listed so far is something we could just look up ourselves on Westlaw and take judicial notice of the law, read it ourselves. So what is the actual factual evidence that you would present that's different from what is already in the record? The minutes of the board where there's no action taken by the board to authorize individual board members to speak on behalf of the board. But the policy that I keep reading you says that there is authority of the president to speak on behalf of the board. The president only speaks on issues if there's a specific issue to speak to. That doesn't authorize the board president to have a social media page on behalf of the district. But does it authorize her to announce things that the board has already decided, like when it's going to have its next meeting? Well, I think they can all do that. And that's within their private realm. I mean, simply saying we had this board meeting, I don't think that that reflects anything in terms of their official role. They're simply reporting. This is what transpired. In the Linkey decision, they talked about a situation where the board president made a comment about the pandemic. And then the next day, they made the same comment about the pandemic at a private barbecue. And the fact that they made that comment at the private barbecue doesn't mean that it's state action. Sorry, can I ask you about this? BB9012A adopted. It seems the version I have is adopted August 9th, 2018, which recognizes that electronic communication is an efficient and convenient way for board members to communicate and expedite the exchange of information within the district and with members of the public. That sounds like a board policy allowing electronic communication from board members to the public. So if you're saying that the board rules have not changed before or after 2018, I'm having trouble understanding how there isn't a policy that allows exactly what we're talking about. I would refer the court to the legal references on 9012A and B. And what you'll see is Ralph M. Brown Act. And so what we're doing is where the governing board recognized it's an efficient way for board members to communicate and expedite the exchange of information within the district. That may come before the board. You could be engaged in a serial Brown Act violation. But in terms of authority, examples of permissible electronic communications concerning district business include but are not limited to dissemination of board meeting agendas and agenda packages, reports of activities from the superintendent and reminders regarding meeting times, dates, and places. Now, at least some of what was on Alcotta Radcliffe's Facebook page was exactly that, right? Yes, but the same information is on the district webpage. What difference does that make? Isn't she authorized to use her webpage to communicate exactly those things? And if she is, and she blocked the Garniers from being on that webpage entirely, not only with regard to other things, why isn't that just the end of things? Well, if you take a look, it says board members may use electronic communication to discuss matters that do not pertain to district business. All right, but that's a different thing. That's not what we're talking about. We are talking about the particular things on her website that are specifically noted to be permissible electronic communications concerning district business. And those are at least some of the things on her website. Okay, but I think that the issue of what her status was at any particular time here is also important. We're talking about her being elected in 2014. When did she become the board president? When were these statements? But this particular piece, it doesn't have to do with her being a board president. Okay, but my reading of it is that it's a caution to board members to not engage in communications that could compromise them under the government. That's just some things, and if she does that, she's in trouble. But it's also permission to do other things. Okay, I understood. Just to make sure I'm with you all, are you talking about the board policy 9012A? Right. And it's my understanding that was not in the record. Is that correct? That is correct. It sounds like you're representing to us that it's been the policy the whole time. Yes, yes. And is it available if we go look at the website of the board where we define that? Yes. So it's basically a law, a rule. It is a board bylaw, yes. So it's subject to judicial notice, no? Yes, I think you could take judicial notice of it. And I had trouble finding a version from before 2018. But to remand, to learn something that you just could tell us today seems a little formalistic, even if technically it's not on the record. I mean, you're telling us that in 2017, this rule still existed too?  Or existed too. So if the trial before Judge Benitez really didn't focus on actual authority, what did it focus on? It focused on time, place, and manner. Judge Benitez. Basically, the restrictions under the proposed injunction? Correct. Correct. And he made specific findings. But he did note in our trial brief, we indicated an interest in addressing this issue of actual authority. Judge Benitez was very gracious, and he said that issue has been decided by Judge Whelan on the motion for summary judgment. Okay. We've taken you way over your time. I will still give you three minutes for rebuttal, but let's hear from the other side. Thank you. May it please the court, I'm Corey Briggs, privileged to represent the appellees here. I want to join in my colleagues in the court's comments about the victims of the fire. I hope everybody's okay. In light of the conversation that the panelists just had with my colleague, really just a couple points I want to make. The first one is that the appellants, in their petition to the U.S. Supreme Court, they wrote on pages 49, carrying over to 50, to be sure, even outside of board meetings, petitioners were empowered to inform the public about the district. The reason I mentioned that quote to you is because in the district's answering brief here, the district is trying to make it sound as though the trustees can only speak as a unified voice once the district, once the board itself has taken action. Prior to the board taking an action, there's no authority whatsoever. I suppose that's true. Even if it's true, doesn't the language that we've been focusing on most recently in 9012A say that they at least have the authority to communicate those things, the things that the board has decided on? That is at least some of what O'Connor Radcliffe was doing. Do you, by the way, agree that Zane is out of the case? Yeah, it's moot as to Zane. So on her website, there are at least several, many such entries of things that the board actually decided. Yes. So isn't that all we need to decide? Yes, I had much longer comments, but in light of what I've heard already, I don't want to rehash it. The point I'm making here is that O'Connor Radcliffe, she's the only one remaining, really wants to have it both ways. She wants to say that there's nothing she can do except what the board has authorized her to do. And she, in her petition to the U.S. Supreme Court, took a contrary position. She said, even outside of board meetings, she was empowered to inform the public about the district. And she cited Education Code 35172, which was one of the statutes that was discussed previously. And I think it was Judge Friedland who pointed out subsection C of that. So at the U.S. Supreme Court, O'Connor Radcliffe understood Ed Code section 35172C to give authority to her as a trustee, even though the language of the statute refers to the board. That's important because, as the Supreme Court said in Linkey, custom and usage are also factors for this panel to be looking at and deciding whether there's actual authority. So we have that there. It came from O'Connor Radcliffe herself. The second point I want to make is that there's a lot being made about the Ralph M. Brown Act. That's the state law that says a body cannot make a decision except at a public meeting. And it has provisions. They're called the serial meeting prohibitions. But it essentially means that you can't have a majority of the members of a body conferring amongst themselves, either through an intermediary or directly, for the purpose of exchanging information or reaching a decision. Those decisions must be made publicly. That's true. However, in PALE, you have district representatives. These aren't five at-large positions. Each trustee represents a certain, it's called a district. Sorry to use the term district in two different ways. But there are five different districts. They have a defined set of constituents. It's not everybody. We're all five. So they have to talk to their constituents. As members of that body, they are going to be making decisions about compensation for administrators and teachers, school safety, curriculum, vaccinations, all sorts of things, whether the schools will close or not. And those are things for which the members solicit input. They want community feedback. That is part of the job. The Sanborn case, it's Sanborn versus Chronicle Publishing. I think we cite it in our brief. It recognizes that a government official's communications with the public or the press are duties incidental to the normal operations of that person's office. To me, those are extremely persuasive arguments. They were made to the Supreme Court aidly by Pamela Carlin. And the holding, which is kind of strange to me, seems to be that being within the legitimate job role is not the test. That they have to have actual authority to speak on behalf of the state. That's why I began by asking, what's the state? Is the state the board, or is the state an official? I mean, maybe it's a circular thing. If the official does have this responsibility, then speaking on behalf of themselves is speaking on behalf of the state. Because they keep using the word state, and they don't use the word any subdivision of the state. They use the word state. Usually, government officials are the state. Go ahead. I didn't mean to speak over you. Perhaps it would help to understand it this way. School districts are subdivisions of the state in California. They are state agencies. And I think what it means, who is the state in this particular case, is the power unified school district. It's a subset of the state. I don't think anybody, it's certainly not on our side of the case. I don't think my colleague is saying that any of the members of the board are authorized to go talk about coastal commission issues or Department of Transportation issues. The board doesn't agree there, so that's not the question. I mean, the question is, why isn't a state official within their job description to stay? Right. So they speak as elected officials in the jurisdiction where they represent people. Counsel, that seems overly broad to me. Are you suggesting that any school board member can speak to the public on the board's behalf on any matter that occurs before the board? If it's at a public meeting, yes. If it's outside of a public meeting, they can speak to anybody about anything. And I was just going to read you something on that. So maybe this is a good segue, Judge Coleman. And I'm going back to the Brown Act. Government Code Section 54952.2 B3A. And this is in the context of these serial meetings that my colleague was talking about before. It says paragraph 1, where it says you shall not meet outside of a public meeting. Paragraph 1 shall not be construed as preventing a member of the legislative body from engaging in separate conversations or communications on an internet-based social media platform to answer questions, provide information to the public, or to solicit information from the public regarding a matter that is within the subject matter jurisdiction of the legislative body, provided that a majority of the members of the legislative body do not use the platform to discuss among themselves business of a specific nature that is within their subject matter jurisdiction. In other words... Go ahead. Go ahead. The California State Legislature recognizes that members of bodies are going to be having conversations with members of the public. And in particular, they even know that it's happening on social media. But that doesn't necessarily... The problem I'm having with Linkey is I think the same issue that Judge Berzon is wrestling with. It seems to draw a distinction between actual technical authority to make binding pronouncements on behalf of the board. And what I understand the Brown Act to be saying is you can't do that as an individual board because if you start making decisions that are binding on the board in less than full board membership, that violates state law and the Open Public Meetings Act. Judge Tolman, I don't think it would violate the Public Meeting Act. I think it would violate other law because an individual doesn't have the authority to do that. Even if I were... So if that's the case, aren't they just sort of acting as the court crier, so to speak, on behalf of the school board when they're simply recounting what action was taken by the board at the public meeting that was duly convened under the auspices of the Brown Act? Not always. They are acting as the representative of the constituents they represent. It's not merely that they make a decision from the dais and then they go out and implement it. They're usually not the ones implementing decisions. That's what staff is for. That's what the superintendent and all the departments are for. They are policy makers. They are the ones figuring out how much should we pay a superintendent. Should we hire a superintendent who has this sort of background and experience or that sort of background and experience? Should we float bonds to build 10 new schools or one new school? But they don't have the actual authority to hire the superintendent. It is the board that hires them, I assume, by majority vote. That's correct, but we're not talking... So if the board member says to the member of the public, I think we should hire Ms. Smith to be our superintendent, that is not binding. She's not speaking on behalf of the board when she says that until the board has acted by majority vote at a notice meeting to hire Ms. Smith. And then she can repeat what the board said. Isn't that the law of the world? That may be true, Judge Tallman. But when a board member says, I'm going to be considering at the next meeting whether to hire so-and-so, what do you think? Who do you think we should hire? What are your thoughts about who the next superintendent to be? And is asking for input, using a social media platform to do that. But then blocking people from whom you don't want to hear because... What if the conversation occurs at the barbecue in the backyard of the neighbor? What's the conversation? Whether or not we should hire Ms. Smith to be the superintendent. The conversation happened. Yeah. Where's the blocking? Okay, so you're drawing the distinction between excluding others from the... I guess the plaintiffs here would not be invited to the barbecue. Right, but if it's a barbecue at some private person's house, they didn't have a right to be there in the first place. To be there in the first place.  We're talking about... Let me ask you the same question I asked Mr. Shinoff. If we send this back to the district court, would the... I guess now it's Ms. O'Connor, Ratcliffe have the opportunity or should she have the opportunity to ask the district court to revisit its partial summary judgment entered by Judge Whalen? She... When we did the trial, Judge Benitez did say that he wasn't going to revisit the summary judgment issues. He also said, I'm not putting any restrictions on what the trial looks like, what evidence he put forward. I think it was Judge Friedland who asked about the dates on which certain policies and bylaws were adopted and whether things look differently. I do agree with my colleague that the ones that are pertinent here, you've cited a couple of them. They haven't materially changed since they were adopted. So I actually made a note while you were having that conversation with my colleague. I don't know how the case looks any different from the record that you already have. I certainly understand why my colleague would like another bite at the apple, but it's going to be legal authorities that pertain here. We already have the evidence... Legal authorities that Judge Benitez said, I don't want to revisit because Judge Whalen has already decided the question of authority. But it's a legal question. The legal question was decided below. It's now in front of this panel. And all of the legal authorities that we would give you, you have in one... Well, it seems to me that the only possibility of what would be useful, if anything, would be on the other piece of what he says is relevant, which is customs and tradition, essentially. So the question is, do you have anything to say about customer usage? That is one of the reasons why I actually wanted to read that Brown Act provision to you as well. Even the legislature recognizes that individual members of decision-making bodies use social media platforms to communicate with the public, to solicit their input, to disseminate information. There's a statute that says that is okay under the Brown Act. Right, but what I'm asking is, is there any evidence that might be illuminating in your favor that you could put on other than a statute to custom and usage? I think what you have... I don't think that the record would look any better on remand. What we have are the actual printouts of the social media posts from O'Connor Ratcliffe on Facebook and on Twitter. Those are already in the record. That would not change. That shows her custom, her usage of that medium over a period of years. Combine that with a statute in the Brown Act itself that recognizes that that sort of communication is not going to be violative of the public meeting requirement. You put those things together, and I think you have ample legal authority and evidence to show that there was actual authority to communicate in this way, in addition to some of the stuff you read earlier, Your Honor. If I could just check my notes here, I want to make sure I covered the remaining issues that didn't get covered before. There was one other point about these being basically perennial campaign pages. I think that's a convenient argument, but it's really not tenable, and here's why. Number one, there is a campaign season or an election season in California. State law dictates when you can file and when you can start running for election and when you can start collecting campaign contributions. It's not a perennial campaign season in California. Secondly, that proposal or that position by O'Connor Ratcliffe doesn't take into account what you do with a trustee who's not going to run for reelection or who's turned out. Would a trustee in that position really not have to abide by a constituent's First Amendment rights? Would such a trustee be able to block somebody by saying, I'm not running for reelection again, but because politicians are always running for election, all of our social media posts are campaign posts. That would just be the exception that follows the rule. I'm close to the end of my time. I didn't have any other points that hadn't been covered in comments. I'm happy to answer any remaining questions with my time left. Otherwise, I will surrender it. I guess we have this oddity that somehow we can find the 2018 board rules, but a lot of the record is from before 2018. Like, I don't think we have a Twitter post from O'Connor Ratcliffe in 2018, August or beyond, which is when we have this rule. You're both saying the rules were the same, but is there a way for us to find that so we can cite it? Or is it possible for you to submit it? How would we find the 2017 board rules? I, let me go out on a wing here, on a limb here. I think my colleague and I could probably stipulate if we had a few days to do this, and we could just submit for you an agreed copy of the authorities that we believe apply to the time period covered by this case. I just, I realize that you might not have everything at your fingertips, but we could probably do that for you without much effort if the panel allowed it. I'd be happy to work with Dan and Mr. Shinoff to do that. So, I don't know if Judge Talmadge has, I guess, I think we can take- I'm a little uncomfortable assuming the role of the fact finder here, if the record is not complete. It's not a fact finding. These are public rules. It's just a question of, and the current ones are publicly available. It's just that this is historical. That's the problem. I wasn't, and to be clear, I wasn't proposing more evidence. I was proposing giving you copies of bylaws and policies. I think if it's possible to have a submission, if it could be joint, it would be great. If it can't be joint, I guess I suggest perhaps it be a motion for judicial notice, but I think it is a legal authority. So, ideally, you would agree on what the law was at the time and could tell us, because it's just hard for us to find it at this point, because I think it's been removed from the website. I'd be happy to work with my colleague to do that if the panel directs me to do so. I think that would be great. If the panel is going to give that direction, I just want you to know, I'm going to be gone from the 28th of January to February 10, and I won't have internet. So, if you need it before, let us know. Otherwise, give me maybe a week after I get back to work with my colleague. The representation of both of you is that the 2017 provisions and the 2018 provisions are basically the same. They're substantially the same. I can't tell you they're identical, but in substance, they are the same. Oh, so yes, it would be better to have it formally submitted, but on the other hand, there's no emergency time. My time is up, and unless you have questions, I'm prepared to submit. Thank you, Your Honor. Thank you very much. Thank you. Let's do three minutes for rebuttal. Thank you very much. That says the language that Mr. Briggs quoted with regard to a recognition by the Brown Act of the social media context. I've never quite understood your Brown Act argument anyway, but this seems to specifically take it into account, does it not? I don't believe so. I believe that the Brown Act creates this sharp line in terms of when the board gets to speak, and I think that what is being proposed here is truly an overbroad restriction on the First Amendment rights of board members who also happen to be private individuals, so I think that is a significant issue. There's a reason, obviously, that the U.S. Supreme Court remanded this case to the Circuit Court, and they noted in Linkey they did that because they believed that there was an ambiguity, and I believe that the ambiguity is the issue of actual authority, because if it was that clear, I believe that the U.S. Supreme Court would have sided with the plaintiffs and would have said, as a matter of law, this comports with the Linkey test, and I simply don't believe that to be the case. And Mr. Briggs, his offer, obviously, I would work with Mr. Briggs on providing you with that. That won't be a problem whatsoever. We'll do that jointly. Mr. Briggs is a gentleman, and we've always worked very well together. So the issue, it's interesting, he raised the issue of district area representatives, and district area representatives is under the California Voting Rights Act, and these members are part of a particular area, but there's nothing to indicate that, okay, so we have five board members. Have each of them been authorized to speak and solicit information on, let's say, for example, superintendent's salary? Those issues are discussed at a board. They've been authorized, at least in the language I read you before, to do on websites some specific things to communicate decisions that have been made by the board. Yes. And that's some of what was on this website, so why are we talking about other things at this point? So if you take a look at Lindquist, I mean, Lindquist said, in that particular decision, that executive doesn't lose their constitutional rights to simply repeat something that occurred someplace else. That doesn't make it state action, and I think that's an important distinction, because otherwise... Where is that in the opinion? I'm sorry? Where in the opinion is that statement? In the statement about, it was about the executive, it was about Mr. Fried, and it was the issue of his ability to speak on other issues that came up. I mean, there's several references in the opinion. The one reference similar to what you're saying that I found was in the section about, not the actual authority section, but the section about the, he must purport to use the state authority, and it seems to say that just repeating what's already been determined isn't necessarily using the authority, but there is other issues here that they're using the authority, but I didn't see anything in the actual authority discussion that referred to that. I think they do say that the focus on the appearance skips over the actual issue, which is the crucial step of actual authority, and so if this court is saying that it's as a matter of law, then it's curious to me that the Supreme Court would remand this back to the circuit court on an issue of law. Well, do you have any information that you would put on with regard to custom and usage? Custom and usage, yes, I would. In terms of custom and usage, I would put on information, I would put on evidence about the superintendent and the superintendent's designee being responsible to provide that information and communicate with the public, communicate about events, and have these robust discussions and solicit information on behalf of all board members, because it doesn't serve the board at all for one board member to have a piece of information. That's why you have a public meeting. At that public meeting, the public has a right to speak to matters that are within the jurisdiction of the district, but they also have the opportunity to speak to any matter that's on the agenda, and so if what's on the agenda is a superintendent's salary, they have an opportunity to speak to that, and the majority of the board gets to hear that information simultaneously. Otherwise, you have people that are working on different pieces of information, and that doesn't serve to benefit the board, because the board... What happens down there? Some of O'Connor-Rathliff's website has surveys about subjects, one or more. Do we know whether those are her surveys or surveys put out by the board? Do we know? I do not know. I don't want to misrepresent anything to the court. I would assume they aren't, but I don't know. Aren't what? I assume that they are not her surveys, but I'm strictly guessing. Well, if they, in fact, are surveys that the board puts out and says, you know, we want to gather this information, how would they get to people other than through their representatives? Through the district social media site that's overseen by the superintendent and the superintendent's designee. The superintendent is the spokesperson for the district, and that social media site serves a very particular purpose. I mean, I know that it may not be of any consequence to this court, but there's no indication that the board had any control over the website of T.J. Zane or Michelle O'Connor-Rathliff. There were no funds provided to support it, no staff time provided to support it. This is an independent, in my opinion, these are independent web pages that don't have the indicia of state action. My colleagues have other questions? Okay. Well, thank you both for these very helpful arguments. This case is submitted, and we really appreciate your advocacy, and we are adjourned for the day. Thank you, Your Honor. Have a good weekend. Thank you. May I just ask one question? Mr. Briggs made a very gracious offer, and I'm happy to provide that with Mr. Briggs' help. Would that be beneficial to the court? It would be. If you could tell us the laws that governed at the time, it would be very helpful. Thank you. We will do that. Thank you both, and we really appreciate your cooperation. And it doesn't seem urgent, so if you need to do it after the vacation, that's also fine. Thank you very, very much. Thank you. This court for this session stands adjourned.
judges: BERZON, TALLMAN, FRIEDLAND